UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES LATTANZIO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-171-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MAYME BRUNACINI, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendants Mayme Brunacini and La Mame Kentucky, LLC's motion for summary judgment [Record No. 118] The defendants assert that there are no material facts in dispute and they are entitled to judgment as a matter of law. Plaintiff James Lattanzio disagrees with the defendants' claim that material facts are undisputed. He contends that facts exits which allow him to take his claims to a jury. [Record No. 121] For the reasons explained below, the defendants' motion will be granted and this action will be dismissed.

**I.**

This case involves an ongoing legal battle between Lattanzio and Mayme Brunacini and La Mame Kentucky, LLC. At one time, Lattanzio leased farm land from Brunacini but claims that Brunacini "willfully breached the agreement and unlawfully deprived [him] of possession and value of the hay crop" he had previously seeded on January 31, 2015. [Record No. 60, ¶¶ 1-2] The hay crop at issue was later cultivated, in part, by Scott Mallory, a subsequent tenant. [*Id*. at ¶ 4] According to Lattanzio, the defendants then "went on a

- 1 -

campaign to publically 'smear' [him]." [*Id*. at ¶ 12]  This alleged campaign is the basis for the remainder of the claims, and is the basis for a separate Scott Circuit Court proceeding in which the plaintiff has named others in the alleged conspiracy.  In the state court proceeding, Lattanzio also raised claims for trespass and stalking, which he contends are the basis for Brunacini's breach of their lease agreement, and the partial foundation for an allegedly fictitious and defamatory news story.  The state court action was dismissed on October 19, 2017.  [*See* Record No. 47.]

Lattanzio also claims damages for injuries allegedly caused by an October 1, 2015 news report aired by WLEX Communications, LLC ("WLEX") on WLEX Channel 18 and a related report WLEX published on its website.  [Record No. 60, ¶¶ 15, 20, 25]  The story, entitled *Comair Crash Victim's Farm At Center of Legal Battle*, discusses the lawsuit brought by Lattanzio in the Scott Circuit Court.  [Record No. 121-1, p. 33]  Brunacini states the following in the news story that aired on WLEX: "I found out the house that was worth, that once worth a half a million dollars is worth zero balance right now. It's, It's completely destroyed." [Record No. 118-1, p. 10 (notarized typewritten transcript of the news broadcast (mistakes in original))]  The written news story quoted Brunacini as saying: "I found out the house that was once worth a half a million dollars is worth zero balance right now it is completely destroyed." [Record No. 121-1, p. 33]

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285

F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party moving for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met his burden of production, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

The defendants claim they are entitled to summary judgment because Lattanzio's failure to reply to discovery requests results in no evidence to support his claim. [Record No. 118, p. 5] Additionally, they contend that the affidavit and documents attached to his response to the summary judgment motion, "are void of specific facts, contradict his discovery responses, primarily address complaints against other people, and do not address the claims against Brunacini." [Record No. 123]

### A. Lattanzio's Failure to Reply to Discovery Requests

The defendants argue that Lattanzio has failed to respond to the request for admissions, interrogatories, and requests for production of documents served on March 30, 2018. Rule 36(a) of the Federal Rules of Civil Procedure provides, in part:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to (i) facts, the application of law to fact, or opinions about either; and (ii) the genuineness of any described documents.

Fed. R. Civ. P. 36(a). Further, Rule 36(a) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." *Id*.

Under Rule 36(b), a request for admissions which is not responded to within the applicable time period is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Matters deemed admitted under Rule 36(a) can serve as a basis for granting a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); *First Nat'l Bank Co. v. Ins. Co. of N. Am.*, 606 F.2d 760, 766 (7th Cir. 1979); *Simms v. Harrodsburg*, 06-CV-104, 2007 WL 2792174, at *1 (E.D. Ky. Sept. 21, 2007); *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 06-CV-14342, 2008 WL 5784439, at *18 (E.D. Mich. Sept. 22, 2008).

The defendants ask the Court to deem the matters set forth in its requests for admissions as admitted due to Lattanzio's failure to respond to those requests. Lattanzio contends in response that the defendants inquired about unanswered discovery on May 1, 2018 and, at that time, he indicated he had not received the requests. [Record No. 121, p. 1] He alleges the

defendants then resent the requests on May 11, 2018, and he was in the process of answering the requests when the defendants filed their motion for summary judgment on May 25, 2018. [*Id*.] Lattanzio next claims that he "answered and returned the discovery requests which directly contradict defendants['] summary basis." [*Id*.] He argues that the discovery issue was worked out between the parties per local rule and the defendants agrees to it. [*Id*. at p. 2]

While Lattanzio is correct that the parties appeared to work out the late discovery issue by resending the request on May 11, 20118, his responses were due no later than the June 1, 2018. [*See* Record No. 59, ¶ 4.] The deadline to respond to the requests could not have been extended past this date without the Court's approval. *See* Fed. R. Civ. P. 29(b) ("a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery"); *see also* Record No. 59, ¶ 7 ("The parties may not, by agreement, extend any of the deadlines set forth in this Scheduling Order").[1]

The defendants ask the Court in their motion to deem the matters set forth in its requests for admission as admitted due to Lattanzio's failure to respond to the requests. As relevant to the pending motion, the requests for admission the defendants served on Lattanzio on March 30, 2018, are as follows:

> REQUEST NO. 1: Admit or deny that there is no one who can testify that you were directly impacted, financially or emotionally, by the alleged actions of the Defendants in Counts Two through Eight of your Complaint.

---

[1] Although the Court generally construes pro se filings liberally, *see, e.g., Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), the Sixth Circuit has noted that "[when] a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

> REQUEST NO. 2: Admit or deny that there is no one who can testify that you were "reputably harmed in the public, professional and equine community", by the alleged actions of the Defendants in Counts Two through Eight of your Complaint.
>
> REQUEST NO. 3: Admit or deny that truth is a complete defense to defamation.
>
> REQUEST NO. 4: Admit or deny that "others" referenced in Count Seven of your Complaint are not parties to this action and cannot be added as parties to this action per the Court[']s Order of November 22, 2017.
>
> REQUEST NO. 5: Admit or deny that the unlawful eviction you reference in Count One of your Complaint has already been adjudicated in Mayme Brunacini's favor by the Scott District Court and the Scott Circuit Court.

[Record No. 118-1, pp. 1-2] Because Lattanzio has failed to answer or object to the defendant's requests for admissions in a timely manner, the Court will deem the matters within the requests admitted under Rule 36(a).

### B. Conversion

Conversion is an intentional tort and is generally defined as "the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). Under Kentucky law, conversion requires proof that: (i) the plaintiff had legal title to the converted property; (ii) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (iii) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (iv) the defendant intended to interfere with the plaintiff's possession; (v) the plaintiff made some demand for the property's return which the defendant refused; (vi) the defendant's acts was the legal cause of the plaintiff's loss of the property; and (vii) the plaintiff suffered damage by

the loss of the property. *Id.* (quoting *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12. (Ky. 2005).

Lattanzio cannot support a conversion claim against the defendants because he has failed to prove, at a minimum, that he had a right to possess the hay at the time of the alleged conversion. It is admitted that the unlawful eviction Lattanzio alleges in the Complaint has been adjudicated in the defendants favor. [Record No. 1, ¶ 2] Further, Lattanzio himself represents that he "decided to move off the property" and "vacated the property on Feb 04, 2015," before Brunacini filed an eviction on February 6, 2015. [Record No. 121-1, pp. 2-3] Thus, Lattanzio has not provided sufficient evidence that he had a right to possess the hay at the time of the alleged conversion.

### C. False Light Publicity

To bring a claim for publicity that unreasonably places the plaintiff in a false light before the public, he must prove that: (i) the false light in which he was placed would be highly offensive to a reasonable person, and (ii) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff was placed. *McCall v. Courier Journal & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981). Kentucky law does not recognize a claim for invasion of privacy based on oral statements. *See id.* at 887 ("right of privacy does not prohibit … statements which are oral").

The only written publications mentioned by Lattanzio is the WLEX Channel 18 story which was available on its website. There is no evidence of any written publication by the defendants. While Lattanzio takes issues with how the story was written, the reporter or the news station is not a party to this litigation. Further, even if the WLEX Channel 18 story could be attributed to the defendants, the only evidence of their involvement with the story is a

statement about the value of the house located on the property. It is undisputed that the house was once worth several hundred thousand dollars and is now worth nothing. Thus, the defendants are entitled to summary judgment on this claim.

D.     **Defamation**

A claim of defamation consists of the following elements under Kentucky law:

> (i) a false and defamatory statement concerning another; (ii) an unprivileged publication to a third party; (iii) fault amounting at least to negligence on the part of the publisher; and (iv) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (citing Restatement (Second) of Torts § 558 (1977)). Regarding the first element, a statement is defamatory if it tends to bring a person into public hatred, contempt or ridicule, cause the person to be shunned or avoided, or injure the person's business or occupation. *McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky.1981). As for the third element, the term "'publication' is a term of art, and defamatory language is 'published' when it is intentionally or negligently communicated to someone other than the party defamed." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004).

Lattanzio identifies as defamatory the following alleged statements about him: (i) he is a criminal; (ii) he engaged in criminal mischief; (iii) he engaged in animal cruelty; (iv) he engaged in criminal theft; (v) he is wanted by the FBI; (vi) he is being criminally investigated; (vii) he is leaving mayhem; (viii) he is leaving destruction; (ix) he is a wife beater; (x) he is violent; (xi) he is dishonest; (xii) he sues everyone; (xiii) he destroys other people property; (xiv) he steals from old ladies; (xv) he ruined communities' property values; and (xvi) he was

not licensed. [Record No. 60, ¶¶ 19, 24] He also alleges that the story publically aired on WLEX Channel 18 and later posted on its website was defamatory. [*Id*. at ¶¶ 20, 25]

Lattanzio alleges multiple defamatory statements; however, he has put forth no admissible evidence concerning almost all of the alleged statements made by the defendants. The only statement that the evidence shows was made by Brunacini is regarding the value of the house located on the property. Brunacini does not dispute that this statement was made, however, she asserts that the statement is true. And she properly contends that truth is an absolute defense to a defamation claim. *See Stringer*, 151 S.W.3d at 796. As previously discussed, the statement by Brunacini that the house was once worth several hundred thousand dollars and is now worthless is true. Therefore, Lattanzio's claim for defamation fails.

### E. Tortious Interference with Business Relations

The claim of tortious interference with business relations requires: (i) the existence of a valid business relationship or expectancy; (ii) the defendant was aware of this relationship or expectancy; (iii) the defendant intentionally interfered; (iv) the motive behind the interference was improper; (v) causation; and (vi) special damages. *Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. Ct. App. 2014) (citing *Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)). The record is devoid of any evidence indicating that the various statements, allegedly made by Brunacini, ever occurred. The only conduct which is based on evidence in the record is the statement made in the WLEX Channel 18 news story. Further, Lattanzio has not provided evidence to show Brunacini's statement intentionally interfered with a valid business relationship or expectancy, or that the motive behind any such interference was improper. Additionally, in light of the admitted matters and Lattanzio's own affidavit, there was no willful breach of an

agreement or unlawful eviction. [*See* Record Nos. 118-1, pp. 1-2 (deemed admitted); 121-1, pp. 2-3 (voluntarily left the property)]

      **F.    Intentional Infliction of Emotional Distress or Outrage**

To proceed on a claim of intentional infliction of emotional distress ("IIED") or outrage, Lattanzio must offer proof: (i) that the wrongdoer's conduct was intentional or reckless; (ii) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (iii) a causal connection between the wrongdoer's conduct and the emotional distress; and (iv) that the emotional distress was severe. *Stringer v. Wal–Mart Stores, Inc.,* 151 S.W.3d 781, 788 (Ky.2004) (citing *Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 2–3 (Ky.1990)); *see also Brewer v. Hillard*, 15 S.W.3d 1, 6 (Ky. Ct. App. 1999) (tort of IIED and outrage is one in the same). Lattanzio claims that the defendants' conduct was outrageous and caused him severe emotional distress.

Kentucky courts have "set a high threshold for outrage claims," *Stringer*, 151 S.W.3d at 791. "[A] claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Humana*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). Again, the only conduct the evidence supports is the statement in the WLEX Channel 18 story. Brunacini's true statement regarding the value of the house was not about Lattanzio, and cannot be said to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

### G. Conspiracy

Lattanzio's common law conspiracy claim against the defendants is based on the alleged conversion, false light, and defamation. To prevail, Lattanzio must show an unlawful/corrupt combination or agreement between two or more persons to do by some concerted action an unlawful act. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky.1995). Civil conspiracy is "inherently difficult to prove, and notwithstanding that difficulty, the burden is on the party alleging that a conspiracy exists to establish each and every element of the claim in order to prevail. *Shure v. Ford*, No.2011–CA–000144–MR, 2012 WL 1657133, at * 11 (Ky. Ct. App. May 11, 2012). There "must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). Lattanzio has presented no proof that the defendants were "active, knowing participants in [any] misconduct." *Peoples Bank*, 277 S.W.3d at 261; *see* Fed. R. Civ. p. 56(e).

### IV.

In short, Lattanzio has failed to present evidence from which a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). His claims are based on speculation and allegations against persons who are not named as defendants in this action. Lattanzio had the opportunity to conduct discovery and find evidence of the named defendants' alleged wrongdoing. But the only support Lattanzio offers for any of his claims is a true statement in a news story and alleged conduct others have done. This is insufficient

- 11 -

to create a genuine issue of fact requiring a trial. Therefore, the defendants' motion for summary judgment will be granted regarding all of Lattanzio's claims.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Brunacini and La Mame Kentucky, LLC's Motion for Summary Judgment [Record No. 118] is **GRANTED**.

2. Plaintiff James Lattanzio's claims against Brunacini and La Mame Kentucky, LLC, are **DISMISSED**, with prejudice.

3. This Action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 13th day of July, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge